Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,685-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MICHELLE R. ROZELLE                    Plaintiff-Appellee

versus

RICHARD A. ROZELLE                     Defendant-Appellant

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 46,762

Honorable Anastasia Stacy Wiley, Judge

* * * * *

LAW OFFICES OF GARY D. NUNN           Counsel for Appellant
By: Gary D. Nunn

MURCHISON & MURCHISON, LLC            Counsel for Appellee
By: Robert Charles Owsley

* * * * *

Before STONE, HUNTER, and MARCOTTE, JJ.

**MARCOTTE, J.**

This appeal arises from the Eighth District Court, Parish of Winn, the Honorable Anastasia Wiley presiding.  Appellant Richard Rozelle appeals the trial court's ruling granting his wife a protective order against him, effective until March 16, 2023, pursuant to the Protection from Family Violence Act ("PFVA"), La. R.S. 46:2131.  For the following reasons, the trial court's ruling is affirmed.

**FACTS**

On August 30, 2021, Michelle Rozelle ("Michelle") filed a petition for protection from abuse, seeking a protective order from her husband, defendant Richard Rozelle ("Richard").  Michelle and Richard were separated at the time of the incident that caused Michelle to seek a protective order.  Michelle stated in her petition that Richard was in "intensive outpatient treatment" for alcoholism and he was drinking during his treatment.  She stated that he would "aggressively" call and text her while he was drunk.

Michelle stated that in April 2021, Richard was drunk and threatened to kill her and himself.  He went to retrieve his gun and she "had to leave."  Michelle said that Richard was involuntarily committed at Longleaf Hospital shortly thereafter for that incident.  She filed for a protective order, which was granted.  Michelle averred that after Richard left the hospital, he violated the protective order and was arrested.  Michelle agreed to "drop" the protective order in May 2021, when Richard consented to enter a rehab

facility and continue the full course of treatment.[1]  Michelle reiterated that he has a history of severe alcoholism.

On August 29, 2021, Richard came to Michelle's house after she told him not to come over.  When Michelle refused to open the door and told Richard to leave, he threatened to break the door down.  Michelle told him that she would call the police, and Richard left.  Richard proceeded to again "aggressively" text and call Michelle.  Michelle then contacted law enforcement, and a deputy spoke with Richard and told him not to return to her home or contact her.[2]  Richard continued to call and text her, saying that he would do so all night.

Richard at that point told Michelle that he wanted to "come get his pistol" from her.  Michelle stated that she again called the police and a deputy returned to her house.  At that point, Richard came to her house, and backed out of the driveway when he saw the deputy.  The deputy then arrested him for driving while intoxicated.  Michelle said that, given the past incident in April 2021, and Richard's increased drinking and anger, she was afraid that he would hurt her.

On August 1, 2021, the trial court granted Michelle a temporary restraining order ("TRO").  The TRO ordered Richard to not abuse, harass, stalk, monitor, or threaten Michelle, and he was forbidden from contacting her.  Richard was ordered to maintain a distance of 100 feet from Michelle, and he was ordered not to go within 100 yards of her residence or place of

---

[1] At a hearing on the instant protective order, the trial court confirmed that Michelle filed a motion to dissolve the prior protective order.  The trial court gave the date of May 13, 2021; it is unclear if that was the date the motion to dissolve was filed or was granted.

[2] Presumably, the Winn Parish Sheriff's Office responded to the call.

2

employment. The TRO also ordered Richard not to damage any of Michelle's belongings, shut off her utilities, or interfere with her living conditions. Richard was ordered to appear at a hearing on the protective order.

On September 16, 2021, a hearing was held on the protective order. Michelle and Richard were present; neither was represented by counsel. Michelle testified to the above facts and added the following. She stated that she and Richard were married 39 years. She said that as of April 7, 2021, she was separated from Richard. She retained an attorney to file for divorce, but had not yet done so. Michelle stated that she intended to file for divorce in October 2021, because she and Richard would have lived separate and apart for six months by then. Michelle testified that for the previous four to five years, Richard drank fairly heavily.

Michelle testified about the prior incident that occurred in April 2021. She said that Richard wanted more whiskey, because "he was out" and he began "cussing and fussing and telling me how I was his problem and I was hurting him." Michelle said that she texted their son, Jeremy, because Richard had threatened to kill her a couple of times before, and he was "very, very angry." She testified that she told Richard that she needed to "go stay at mom's house for a couple of weeks." Richard told her that she was not going to leave, and he said, "I'll kill you, the dog, and myself."

Michelle stated that Richard then went to the mantel to retrieve his gun, which is where he kept it. Michelle said that when Richard was passed out in his chair, she hid his guns, because she was concerned about what would happen. Michelle said that Jeremy stepped between Richard and Michelle and said to her, "Get out. Leave and get out," so she left. Michelle

3

testified that when Richard was released from the hospital and the first protective order was in place, he was advised to remove the ammunition and guns from his home.

Michelle stated that she filed the previous protective order, because she did not want Richard to know where she lived after she left their family home. Michelle stated that she filed a motion to dissolve the protective order so that he would get treatment for his alcoholism, and she dropped the protective order, because she wanted him to get well. Michelle stated that, after she dropped the first protective order and while Richard was in treatment for his alcoholism, he bought a pistol.

Michelle stated that he called her one night, threatening to kill himself with his new gun while she listened on the phone. She told Richard that she would call the police, but she would not go to his residence and check on him. Michelle said that he "let it go." She testified that she was able to speak with him and get his gun from him. Michelle stated that Richard left treatment on June 4, 2021, and he did not follow through with his intensive outpatient treatment. She said that they had "started talking some, trying to see if there might be a way to work through things." Michelle encouraged Richard to find a doctor to start outpatient treatment, which he did. She stated that they also completed several marriage counseling sessions.

Michelle stated that when the deputy went to Richard's residence on August 29, 2021, to tell him not to go to her home, Richard was drunk. On that date, Richard informed her that he wanted his gun back, and he came to her house while the deputy was there to get his gun. It was then that he was arrested for DWI. Michelle testified that she is afraid for her safety and she does not believe Richard has any guns unless he has purchased more.

4

Richard testified that on August 29, 2021, Michelle had invited him over "to have supper and then for us to have sex." Richard said, "I have mouthed off before" and "I haven't tried to hurt her in any way." Richard characterized his "mouthing off" as "just common arguing between one another." Richard admitted that a deputy came to his house and told him not to go to Michelle's house, and that he returned to her home anyway. Richard acknowledged that that was "wrong." Richard affirmed that he was arrested for a DWI. Richard agreed with what Michelle testified to about what happened on August 29, 2021, when he got to her house, and when he later returned.

Richard stated that he no longer lives in his home, but instead stays with his son, Joey. Joey testified that he has guns in his house, but they are locked up. The trial court informed Joey that he needed to remove the guns from his home, if Richard was going to stay with him.

The trial court issued a protective order and stated that the order will be in place until March 16, 2023. On September 16, 2021, the trial court signed the protective order. The order contains the same conditions and restrictions as the TRO. Richard now appeals.

**DISCUSSION**

Richard argues that the trial court did not receive into evidence any documentation that proves what Michelle said about his actions. Richard argues that the trial court did not allow any text or voice messages to come into evidence which would show that no crime was committed justifying a protective order. Richard states that the only evidence was testimony from himself and Michelle. He states that he never committed an act of violence against his wife. He argues the abuse prevention order is not supported by

5

evidence and does not comply with the Louisiana Domestic Abuse Assistance Law, as the definition of domestic abuse found in the law does not include "general harassment." Richard avers that even if he threatened physical harm to Michelle, that is not a crime, but only harassment under the law. Richard states that the trial court abused its discretion and its ruling should be reversed.

Michelle states that the trial court's granting her request for a protective order was not based on her testimony alone. Richard was questioned by the trial court and confirmed the facts to which she testified. Michelle states that the definition of domestic abuse found in La. R.S. 46:2132 "includes but is not limited to physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana." Michelle contends that she testified that on several occasions, Richard threatened to kill her and himself, and even their dog. She states that this is not only a crime, but "goes to the very core purpose of the creation of the protective order statute." Michelle states that she asked for protection from the court due to violent threats, and she did not want to wait until a violent act occurred before seeking a protective order. Michelle states that she was in fear for her safety and that Richard's actions meet the definition of assault found in La. R.S. 14:36.

Michelle states that she previously received a protective order against Richard when he threatened violence against her. Michelle states that Richard finally stopped his harassing and threatening behavior only after he was arrested for a DWI offense. She asks this Court to affirm the trial court's ruling.

A court "may grant any protective order...to bring about a cessation of domestic abuse...*or the threat or danger thereof*." La. R.S. 46:2136(A). For purposes of the PFVA, La. R.S. 46:2132 defines domestic abuse as including "any offense against the person, physical or nonphysical, as defined in the Criminal Code of Louisiana." Pursuant to La. R.S. 14:36, assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.

A trial court's decision regarding a protective order issued pursuant to the PFVA is subject to abuse of discretion review. *Spillers v. Senn*, 54,521, (La. App. 2 Cir. 5/25/22), __ So. 3d __, 2022 WL 1654142. Therein we stated:

> In the area of domestic relations, much discretion is vested in the trial judge, particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. When findings of fact are based upon a decision regarding credibility of witnesses, respect should be given to those conclusions, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said.

*Id.* at *3, *citing Larremore v. Larremore*, 52,879 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1282.

A party seeking a protective order under the PFVA must establish the necessary facts by a preponderance of the evidence. *Spillers v. Senn, supra*; *Green v. Myers*, 54,200 (La. App. 2 Cir. 3/9/22), 335 So. 3d 514, *reh'g denied* (4/5/22).

Thus, in effect, Michelle was required to prove by a preponderance of the evidence that Richard had committed assault upon her. The trial court was within its discretion in finding that the plaintiff met her burden of proof. Michelle testified that Richard threatened to kill her and sent threatening text

7

messages to her. Michelle testified that Richard came to her house and was not admitted entry. Richard later returned to Michelle's home even after he was told by her and law enforcement not to do so, and he failed again in his attempt to enter Michelle's home because law enforcement was present. It was then that he was arrested for the offense of driving while intoxicated.

Richard admitted to his behavior at the hearing on the protective order. Michelle's testimony and the fact that she previously sought and was granted an order of protection from Richard for similar behavior support a finding that a reasonable person in Michelle's situation would believe that she would be the victim of a battery. We cannot say the trial court abused its discretion in this matter.

## CONCLUSION

The trial court's grant of the protective order is affirmed. All costs of this appeal are taxed to appellant.

**AFFIRMED.**